# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT CINCINNATI

CHARLES R. CROSSTY,

                Petitioner,            :     Case No. 1:19-cv-292

    - vs -                          District Judge Matthew W. McFarland
                                        Magistrate Judge Michael R. Merz

WARDEN,
  Mansfield Correctional Institution,

                                 :

              Respondent.

# REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner Charles Crossty under 28 U.S.C. §2254, is before the Court for decision on the merits. The relevant filings for consideration are the Petition (ECF No. 1), the State Court Record (ECF Nos. 9 and 11), and Respondent's Return of Writ (ECF No. 10).

On December 9, 2019, Magistrate Judge Stephanie Bowman, to whom the case was then referred, granted Petitioner an extension of time to file a reply to twenty-one days after her Order was served on Petitioner (ECF No. 13). Because her Order was served on Petitioner by mail, his time to file a reply was extended another three days by Fed.R.Civ.P. 6 and therefore expired on January 2, 2020. No reply was filed by the deadline nor has a reply since been tendered for filing.

**Litigation History**

On March 8, 2016, Crossty was indicted on (1) six counts of trafficking in heroin in violation of Ohio Revised Code § 2925.03, (2) three counts of trafficking in cocaine in violation of Ohio Revised Code § 2925.03, (3) two counts of aggravated trafficking in drugs in violation of Ohio Revised Code § 2925.03 where the substance trafficked was fentanyl, a schedule II drug, and (4) one count of engaging in a pattern of corrupt activity in violation of Ohio Revised Code § 2923.32(A)(1)(Indictment, State Court Record, ECF No. 9, Ex. 1). The trafficking counts all carried a specification that the offense had occurred within 1,000 feet of a juvenile. *Id.*

The case was tried to the bench in November 2016 and Crossty was found guilty on all counts. After merging some counts under Ohio Revised Code § 2941.25, the trial court sentenced Crossty to twenty years and nine months imprisonment. Crossty appealed to the Twelfth District Court of Appeals which affirmed the trial court. *State v. Crossty,* 2017-Ohio-8267 (Ohio App. 12th Dist. Oct. 23, 2017), appellate jurisdiction declined. Case No. 2017-1710 (Ohio S. Ct. Apr. 25, 2018)(unreported; copy at State Court Record ECF No. 9, PageID 204).

On March 19, 2018, Crossty filed a petition for post-conviction relief under Ohio Revised Code § 2953.21 which the trial court dismissed as untimely (State Court Record, ECF No. 9, Exs. 18 and 20). The Twelfth District affirmed the dismissal on the same basis. *Id.* at Ex. 24. After unsuccessfully attempting a second post-conviction petition, Crossty filed his Petition in this Court April 15, 2019, pleading the following grounds for relief:

> **Ground One:** The evidence is insufficient to establish venue in Clermont County beyond a reasonable doubt, in violation of the Fourteenth Amendment of the United States Constitution.
>
> **Supporting Facts:** The Clermont County Court of Common Pleas did not have jurisdiction over Crossty where [there] is insufficient evidence to prove that a crime was committed in Clermont County.

2

**Ground Two:** The evidence was insufficient to sustain a conviction of the charge of O.R.C. 2923.32(A)(1), engaging in a pattern of criminal activity.

**Supporting Facts:** The State failed to establish that Crossty engaged in a pattern of corrupt activity.

**Ground Three:** Crossty was denied effective assistance of counsel in violation of the Sixth Amendment of the United States Constitution.

**Supporting Facts:** trial counsel was ineffective for not properly cross-examining the State's star witness about statements he made to trial counsel during a pretrial interview.

(Petition. ECF No. 1, PageID 10-11.)

# Analysis

## Ground One:  Insufficient Evidence to Establish Venue

In his First Ground for Relief, Crossty argues the State presented insufficient evidence to prove that his offenses were committed in Clermont County, Ohio.  In defense, Respondent asserts that venue is not an element of any of the crimes with which Crossty was charged and therefore his claim is not cognizable in federal habeas corpus.  Crossty has filed no reply.

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc).  In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.  *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006);

*United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007).

The proof beyond a reasonable doubt requirement applies to every element of a state crime.

*Apprendi v. New Jersey*, 530 U.S. 466 (2000), *quoting Jones v. United States,* 526 U.S. 227 (1999).

Respondent asserts that, as a matter of Ohio law, venue is not an element of any of the crimes with

which Crossty was charged (Return, ECF No. 10, PageID 354, citing *State v. Jackson*, 141 Ohio St.

3d 171, 198, 2014-Ohio-3707, ¶¶ 143-145 (citing *State v. Draggo*, 65 Ohio St.2d 88, 90 (1981); and

*State v. Smith,* 87 Ohio St.3d 424, 435 (2000); *State v. Headley*, 6 Ohio St.3d 475, 477 (1983)).

In his Brief on appeal, Crossty admitted that "[v]enue is not a material element of any offense

charged." (State Court Record, ECF No. 9, PageID 100.)  That admission is in accord with the Ohio

law cited by Respondent.  The Magistrate Judge therefore concludes Ground One does not state a claim

upon which relief can be granted in habeas corpus and should be dismissed

**Ground Two:  Insufficient Evidence to Prove a Pattern of Corrupt Activity**

In his Second Ground for Relief,  Crossty claims the State offered insufficient evidence that he

engaged in a pattern of corrupt activity.  Respondent asserts Crossty procedurally defaulted this claim

by not including it in his appeal to the Supreme Court of Ohio (Return, ECF No. 10, PageID 351).

Crossty has made no reply.

The procedural default doctrine in habeas corpus is described by the Supreme Court as

follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). "Absent cause and prejudice, 'a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed. d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640 [(1991)]. The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017).

> "A claim may become procedurally defaulted in two ways."
> *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). First, a
> claim is procedurally defaulted where state-court remedies have
> been exhausted within the meaning of § 2254, but where the last
> reasoned state-court judgment declines to reach the merits because
> of a petitioner's failure to comply with a state procedural rule. *Id.*
> Second, a claim is procedurally defaulted where the petitioner failed
> to exhaust state court remedies, and the remedies are no longer
> available at the time the federal petition is filed because of a state
> procedural rule. *Id.*

*Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013).

Upon examination of the State Court Record, the Magistrate Judge finds that, as Respondent

asserts, this constitutional claim was not included in Crossty's appeal from the Twelfth District's

decision. Crossty raised only one ground for relief in the Supreme Court of Ohio, the venue question

presented above in Ground One (Memorandum in Support of Jurisdiction, State Court Record, ECF

No. 9, Ex. 15). To fully exhaust a claim in order to obtain habeas review, a defendant must present it

to the highest state court with jurisdiction to hear the claim. *O'Guinn v. Dutton*, 88 F.3d 1409 (6th

Cir. 1996)(per curiam)(en banc).

Because Crossty did not appeal on this claim to the Supreme Court of Ohio, he has

procedurally defaulted on the claim. That is to say, Ohio law allows only one appeal from the

decision of an intermediate appellate court to the Supreme Court of Ohio; an issue available at the

time of such an appeal but not raised cannot be resurrected in a later proceeding. Crossty has not

attempted to show excusing cause and prejudice for omission of this issue. Ground Two should

be dismissed as procedurally defaulted.

In the alternative, Respondent asserts the Twelfth District's decision on the merits of this

claim is neither contrary to nor and unreasonable application of relevant United States Supreme

Court precedent nor an unreasonable determination of the facts in light of the evidence in the state

court record, relying on 28 U.S.C. § 2254(d)(1) and (2).

As noted above an allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.* A sufficiency challenge should be assessed against the elements of the crime, not against the elements set forth in an erroneous jury instruction. *Musacchio v. United States*, 577 U.S. ___, 136 S. Ct. 709, 193 L. Ed. 2d 639 (2016).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus

case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (per curiam). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. 650, 651, (2012)(per curiam); *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam).

The Twelfth District Court of Appeals considered this insufficiency claim on the merits and held:

> [*P55] In his second assignment of error, appellant argues his conviction for engaging in a pattern of corrupt activity was not supported by sufficient evidence. Specifically, appellant argues the state failed to present evidence demonstrating he and his associates, such as Moore, Perkins, and Rivera, were in an enterprise that shared a "common purpose." He also contends the state failed to establish that "two or more charged acts occurred in furtherance of the enterprise." We find no merit to appellant's arguments.
>
> [*P56]  Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law.

8

St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10, 958 N.E.2d 177 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

[*P57] Appellant was convicted of engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1), which provides that "[n]o person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt." An "enterprise" includes "any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity." R.C. 2923.31(C). Further, an enterprise "includes illicit as well as licit enterprises." *Id*. A "pattern of corrupt activity" is defined as "two or more incidents of corrupt activity, whether or not there has been a conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." R.C. 2923.31(E). As pertinent to this case, "corrupt activity" means "engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in" trafficking in drugs in violation of R.C. 2925.03. R.C. 2923.31(I)(2)(c).

[*P58] "When determining whether a group of people are associated-in-fact, a court will look to whether the group is a 'continuing unit that functions with a common purpose.'" *Baker*, 2013-Ohio-2398 at ¶ 19, quoting *Boyle v. United States*, 556 U.S. 938, 948, 129 S.Ct. 2237, 173 L. Ed. 2d 1265 (2009). An association-in-fact enterprise must have three structural features: "a purpose, relationships among the associates, and longevity sufficient to permit the associates to pursue the enterprise's purpose." *Id*., citing *Boyle* at 946.

9

[*P59]  The state presented evidence that, if believed, would have convinced a trier of fact beyond a reasonable doubt that appellant engaged in a pattern of corrupt activity when he engaged in multiple drug transactions in Clermont County and Hamilton County. Contrary to appellant's arguments, evidence was introduced demonstrating that he was in an associated-in-fact enterprise with a group of people that had a common purpose of selling drugs for profit and that he engaged in more than two incidents of drug trafficking in furtherance of this enterprise. Appellant sold or directed his associates, Moore and Rivera, to sell drugs for profit. On six occasions, from January 25 to February 29, 2016, appellant or one of his associates sold heroin, fentanyl, and cocaine to a confidential informant in exchange for more than $6,000. Two of the sales occurred at Perkins' apartment, an established "trap house." As Perkins explained, appellant and his associates, Moore and Rivera, used the apartment to sell drugs for about three or four months before appellant was arrested. Appellant personally sold drugs to Burress at the apartment on January 25, 2016. After setting up another sale with Burress over the phone, appellant had Rivera conduct the physical exchange of the drugs with Burress at the apartment on February 1, 2016.  After these exchanges, Moore began selling drugs for appellant out of Perkins' apartment "all day long" for approximately two to three months. According to Moore, appellant provided her with a new supply of drugs "every day" and he dictated how much of the drugs were to be sold and for what price.

[*P60]  Moore also brought buyers to appellant to purchase drugs. Moore testified that on February 29, 2016, she picked up Burress and transported him to appellant's location so that Burress could purchase drugs. Burress gave appellant $2,800 in exchange for 5.328 grams of cocaine and 8.754 grams of heroin and fentanyl. After appellant and Burress completed their transaction, she turned over $900 that she had made selling drugs for appellant. Appellant then gave Moore 7.789 grams of cocaine and 8.613 grams of heroin and fentanyl to sell for him.

[*P61]  Appellant's argument that Moore and Perkins did not have a "common purpose" in the sale of the drugs because they did not receive a "financial gain" for the sale of the drugs is without merit. Both Perkins and Moore testified they profited from the sale of appellant's drugs out of the "trap house." In exchange for allowing his apartment to be used as a "trap house," Perkins received drugs, items he needed from the store, and care for his apartment. Moore also received drugs in exchange for selling drugs for appellant. The fact that Perkins' and Moore's profits from selling drugs were

10

received in the form of goods (drugs) rather than money is immaterial.

[*P62]  Accordingly, as the state introduced evidence demonstrating appellant was acting with others in an enterprise for the sale and distribution of illicit drugs in Clermont County and Hamilton County, we find that appellant's conviction for engaging in a pattern of corrupt activity was supported by sufficient evidence. See, e.g., Davis, 2017-Ohio-495 at ¶ 16-55. Appellant's second assignment of error is, therefore, overruled.

State v. Crossty, 2017-Ohio-8267.

In its decision the Twelfth District employed the correct federal standard from Jackson as it has been recognized in Ohio law in Thompkins and Jenks. Crossty has offered no showing that the decision does not accurately reflect the facts in evidence and that those facts are somehow insufficient to show his engagement in a pattern of corrupt activity as that crime is defined in Ohio law. Therefore Crossty's Second Ground for Relief is without merit.

## Ground Three:  Ineffective Assistance of Trial Counsel in Cross Examination

In his Third Ground for Relief, Crossty claims he received ineffective assistance of trial counsel when his trial attorney did not effectively cross-examine "the State's star witness [Burress] about statements he made to trial counsel during a pretrial interview."

The governing standard for ineffective assistance of counsel is found in Strickland v. Washington, 466 U.S. 668 (1984):

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the

> Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice.  *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010), citing *Knowles v. Mirzayance*, 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance;  that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to overcome confidence in the outcome." 466 U.S. at 694.  See also *Darden v. Wainwright*, 477 U.S. 168, 184 (1986), citing *Strickland, supra.; Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), citing *Strickland, supra*; *Blackburn v. Foltz,* 828 F.2d 1177, 1180 (6th Cir. 1987), quoting *Strickland*, 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), quoting *Harrington v. Richter*, 562 U.S.

12

86, 111-12 (2011).

> In assessing prejudice under Strickland, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes,* 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. Id., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." Id., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. Id., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter,* 562 U.S. 86, 111-112 (2011).

Crossty raised this claim as his fourth assignment of error on direct appeal and the Twelfth

District decided it as follows:

> [*P72]  In his fourth assignment of error, appellant argues he received ineffective assistance of counsel. Specifically, appellant argues trial counsel was ineffective for not properly cross-examining Burress about statements Burress made to defense counsel during a pretrial interview held on June 29, 2016.

> [*P73]  At trial, before cross-examining Burress, defense counsel revealed that he took notes during the June 29, 2016 interview and purportedly had Burress sign the notes at the conclusion of the meeting. Defense counsel's notes indicated that Burress stated he had acted as a confidential informant for CCNU in exchange for assistance in gaining custody of his children and for leniency in his own criminal case, rather than out of a civic interest in stopping the flood of heroin to New Richmond. The notes also indicated appellant never sold drugs to Burress in Clermont County and that it was "Mike" Rivera who sold drugs to Burress in New Richmond on two occasions. Defense counsel argued the notes were admissible pursuant to Evid.R. 801(D) and could be used for impeachment purposes.

> [*P74]  The state, however, argued that the notes were inadmissible as defense counsel failed to disclose them as required by

13

16(H) and the notes constituted hearsay. The state further argued that admission of the notes would require defense counsel to act as a witness in the case, as defense counsel would be called to testify as to the circumstances surrounding the making of the document.

[*P75]  The trial court did not make a ruling on the record as to the admissibility of the interview notes or defense counsel's ability to question Burress about the June 29, 2016 interview. Defense counsel did not seek to introduce the interview notes when cross-examining Burress. Instead, defense counsel proffered the notes at the close of trial. Appellant now contends that Burress' statement to defense counsel was relevant for impeachment purposes and was "significant * * * [in] suggesting that venue had not been established in the matter." Appellant therefore argues defense counsel was ineffective for not properly cross-examining Burress about his statements during the interview.

[*P76]  To prevail on an ineffective assistance of counsel claim, an appellant must establish that (1) his trial counsel's performance was deficient and (2) such deficiency prejudiced the defense to the point of depriving the appellant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L. Ed. 2d 674 (1984). Trial counsel's performance will not be deemed deficient unless it "fell below an objective standard of reasonableness." *Id*. at 688. To show prejudice, the appellant must prove there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. An appellant's failure to satisfy one prong of the Strickland test negates a court's need to consider the other. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 2000-Ohio-448, 721 N.E.2d 52 (2000).

[*P77]  "The scope of cross-examination falls within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101, 848 N.E.2d 810. In evaluating trial counsel's performance, the reviewing court must indulge a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *State v. Hendrix*, 12th Dist. Butler No. CA2012-05-109, 2012-Ohio-5610, ¶ 14.

[*P78]  The record reveals that even without admission of the interview notes, defense counsel was able to challenge Burress' credibility and recollection of events. Defense counsel got Burress to admit that he was not always an honest man, he had a prior felony conviction for use of a controlled substance, he had lied about

14

attending M.I.T., he had violated his probation, and he had assisted CCNU's investigation in hopes that he would be able to get into a drug treatment program in lieu of receiving a prison term for violating his probation. Although defense counsel did not reference his June 29, 2016 interview of Burress during his cross-examination, defense counsel did question Burress about whether he told "different versions" of events from his trial testimony about his interactions with the police and appellant. Burress admitted he had told different versions, although he maintained he only did so to protect himself. Defense counsel, therefore, successfully challenged Burress' credibility on cross-examination and defense counsel's performance did not fall below an objective standard of reasonableness. See, e.g., *State v. Murphy*, 12th Dist. Butler No. CA2009-05-128, 2009-Ohio-6745, ¶ 32-36.

[*P79] Further, contrary to appellant's arguments, he was not prejudiced by trial counsel's cross-examination of Burress. Though appellant believes additional questioning would have demonstrated that venue in Clermont County had not been established, the record reveals that defense counsel cross-examined Burress on this precise issue. For instance, counsel questioned Burress about where he resided, the location where the phone calls arranging the drug transactions originated, and whether appellant was present at Perkins' apartment in New Richmond for the drug transactions involved in counts one and two. As the trial court specifically found Burress' testimony regarding his presence in Clermont County when he exchanged phone calls with appellant to set up the drug transactions credible, and such evidence was sufficient to establish venue under *Meridy*, 2005-Ohio-241, we find that appellant cannot establish the prejudice prong of *Strickland*. Appellant's argument that defense counsel was ineffective is, therefore, without merit. Appellant's fourth assignment of error is overruled.

*State v. Crossty,* 2017-Ohio-8267.  Crossty has made no showing that this ruling is contrary to or

an objectively unreasonable applications of *Strickland v. Washington,* 466 U.S. 668 (1984).  The

State's objections to the interview notes are plainly meritorious:  there is no doubt they constituted

hearsay.  Moreover, to have introduced them in evidence, defense counsel would have himself

been required to become an authenticating witness and probably required to withdraw from the

representation.  It is certainly not deficient performance to find a different way to sue information

an attorney has gathered into notes.

Because the Twelfth District's decision is not an unreasonable application of Strickland, it is entitled to deference under the AEDPA. Crossty's Third Ground for Relief should therefore be dismissed.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

July 8, 2020.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.